Opinion filed April 3, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed April 3,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00103-CV 

                                                     __________

 

STEPHANIE WILLIAMS A/K/A STEPHANIE SCHOLLER 

AND TIM WILLIAMS, Appellants

                                                             V.

WILLIAM COLTHURST, YUKO COLTHURST, WGW PROPERTIES,
INC. D/B/A CENTURY 21 ADVANTAGE, TOM DEWITT, CENTURY 21 REAL ESTATE
CORPORATION, AND FELIX KAUFFMAN, Appellees

 



 

On Appeal from the 321st District Court

Smith County, Texas

Trial Court Cause No. 03-0049-C/D

 



 

O P I N I O N

 








This
appeal arises from a landlord-tenant dispute.  William and Yuko Colthurst (the
landlords) leased their home in Tyler to Tim and Stephanie (Scholler) Williams
(the tenants) in a written lease signed on March 6, 2000.  The lease provided
for a term of two years beginning on May 1, 2000, and ending April 30,
2002.  The landlords=
home was available for lease for an extended period of time because they were
moving to Japan.  The landlords designated a real estate firm, Century 21
Advantage, to serve as the property manager for the house during the term of
the lease.  Tom DeWitt served as the individual that managed the property on
behalf of Century 21 Advantage.

In
the early part of 2002, the landlords and the tenants began discussing the
disposition of the home at the end of the lease.  The tenants had expressed an
interest in continuing to lease the home.  The landlords informed the tenants
that they wanted to sell the home when the lease ended in April.  The tenants
subsequently invoked an extension clause of the lease that permitted them to
unilaterally extend the lease for an additional six months.

The
tenants= desire to
remain in the home for an additional six months changed when Mrs. Williams
was sexually assaulted in the home on April 16, 2002.  Mr. Williams informed
the landlords in an e-mail on April 20, 2002, that the tenants did not want to
continue occupying the home.[1]  Mr. Williams
suggested to the landlords in this e-mail that, unless they listed the house
for sale, the tenants would sublease the home for the remaining six months. 
The landlords and the tenants subsequently exchanged several e-mails over the
course of the next month discussing the possibility of the tenants vacating the
home prior to the end of the six-month extension period.  The tenants
ultimately vacated the home at the end of May 2002.

The
landlords subsequently filed suit against the tenants on January 8, 2003,
asserting claims for unpaid rent and property damage.  The tenants responded by
filing a counterclaim against the landlords asserting a statutory claim for
wrongful withholding of their security deposit and a premises liability claim
in connection with the sexual assault.  With respect to the premises liability
claim, the tenants alleged that the landlords had failed to equip the home with
proper security devices required by statute.  The tenants additionally asserted
a premises liability claim against WGW Properties, Inc. d/b/a Century 21
Advantage, Tom DeWitt, and Century 21 Real Estate Corporation (collectively
referred to as the property manager).  The landlords joined the assailant who
sexually assaulted Mrs. Williams, Felix Kauffman, as a responsible third party
with respect to the premises liability claim.








The
trial court entered a partial summary judgment in favor of the landlords on the
unpaid rent claim.  The remaining claims proceeded to trial.  At the conclusion
of the presentation of evidence, the trial court granted a directed verdict in
favor of the landlords and the property manager on the premises liability
claim.  Issues concerning the property damage and security deposit claims and
attorney=s fees were
submitted to the jury.  The jury returned a verdict for the landlords on all
submitted claims.  The trial court entered a judgment in favor of the landlords
and property manager in accordance with the partial summary judgment, the
directed verdict, and the jury=s
findings.

                                                                         Issues

The
tenants raise seven issues on appeal.  The first issue challenges the partial
summary judgment entered in favor of the landlords on their unpaid rent claim. 
In their second and third issues, the tenants contend that the trial court
erred in failing to enter judgment in their favor on their statutory security
deposit claim as a matter of law.  The tenants=
fourth issue globally attacks the trial court=s
judgment.  The tenants challenge the directed verdict denying their premises
liability claim in their fifth issue.  The tenants= sixth and seventh issues relate to their
attempt to set aside the award of the landlords=
attorney=s fees.  We
affirm.

                                                                    Unpaid
Rent








The
trial court entered a partial summary judgment in favor of the landlords in the
amount of $8,850 on their unpaid rent claim.  This sum represented monthly rent
of $1,450 and a monthly late fee of $25 for the six-month extension period of
May 2002 to October 2002.[2]  We review
the trial court=s
summary judgment de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  The landlords filed a traditional motion for
summary judgment with respect to their unpaid rent claim.  In a summary
judgment motion brought under Tex. R.
Civ. P. 166a(c), the moving party has the burden of showing that there
is no genuine issue as to any material fact and that it is entitled to judgment
as a matter of law. Browning v. Prostok, 165 S.W.3d 336 (Tex. 2005); Knott,
128 S.W.3d at 215‑16. We review the evidence presented by the summary
judgment motion and response in the light most favorable to the party against
whom the summary judgment was rendered, crediting evidence favorable to that
party if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572,
582 (Tex. 2006); see Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d
754 (Tex. 2007); Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006); Wal‑Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

The
landlords based their claim for unpaid rent on the six-month lease extension
that the tenants exercised in February 2002.  The tenants responded to the
motion by asserting that the landlords agreed to release them from the
extension in the e-mails exchanged between the parties in April and May 2002. 
The tenants submitted a portion of the e-mails as summary judgment evidence to
support their contention.  The landlords replied to the tenants= contention by submitting
all of the e-mails between the parties to support their assertion that the
parties did not reach a valid agreement to excuse the tenants from the
six-month extension.

A
modification of a contract must satisfy the elements of a contract:  a meeting
of the minds supported by consideration.  Hathaway v. Gen. Mills, Inc.,
711 S.W.2d 227, 228 (Tex. 1986). Whether a contract is modified depends on the
parties= intentions
and is a question of fact.  Id. at 228-29.  The burden of proving
modification rests on the party asserting the modification.  Id. at 229.
The affirmative defense of accord and satisfaction is a type of contractual
modification that rests upon a new contract, express or implied, in which the
parties agree to the discharge of the existing obligation by means of a lesser
payment tendered and accepted.  Jenkins v. Henry C. Beck Co., 449 S.W.2d
454, 455 (Tex. 1969).  Because a valid accord and satisfaction depends upon an
agreement, it Aonly
occurs when the parties mutually assent to it,@
and their intention is a controlling element. McCarty v. Humphrey, 261
S.W. 1015, 1016 (Tex. Comm=n
App. 1924, judgm=t
adopted).








A
review of all of the e-mails exchanged between the parties during the relevant
period conclusively establishes that the parties did not mutually assent to the
release of the tenants=
obligations under the six-month extension.  The tenants informed the landlords
at the outset of the e-mails that they would be vacating the house in the near
future.  The initial communications focused on a discussion of whether the
tenants would be subleasing the property to another tenant during the six-month
extension period or if the landlords would be putting the home up for immediate
sale.  The parties discussed the possibility of the tenants vacating the
premises at the end of May 2002 and being released from the remainder of the
six-month extension period.  However, a dispute existed with respect to the
payment of rent for the month of May.  The tenants took the position that the security
deposit that they made at the beginning of the lease term included the last
month=s rent.  Based
upon this contention, the tenants asserted that they had already paid May=s rent since it constituted
the last month that they would be occupying the home.  The landlords disagreed
with this contention and demanded the payment of rent for May.

The
landlords sent the last communication in the exchange of e-mails between the
parties on May 20, 2002.  In this e-mail, the landlords advised the tenants as
follows:  AYou are NOT
released from your extension until you recieve [sic] written notice of such. .
. . You ARE in breach of your lease, and you ARE overdue on your rent for May
2002.@  This e-mail
conclusively establishes that the parties did not mutually agree for the
tenants to be released from the six-month extension period.  Accordingly, the
trial court did not err in granting partial summary judgment on the landlords= claim for unpaid rent. 
The tenants= first
issue is overruled.

                                                                   Waived
Issues

The
tenants second and third issues concern their statutory security deposit
claim.  See Tex. Prop. Code Ann. ' 92.109 (Vernon 2007). 
They assert in their second issue that the trial court erred in denying their
motion for partial summary judgment on their statutory security deposit claim. 
We note, however, that the tenants=
statutory security deposit claim was subsequently tried to the jury.  The
general rule is that a denial of a summary judgment cannot be reviewed on
appeal.  See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625
(Tex. 1996).  Further, where a motion for summary judgment is denied by the
trial court and the case is tried on its merits, the order denying the summary
judgment cannot be reviewed on appeal.  See Ackermann v. Vordenbaum, 403
S.W.2d 362, 365 (Tex. 1966).[3] 
Consequently, the trial court=s
denial of the tenants=
motion for partial summary judgment is not reviewable on appeal.  The tenants= second issue is overruled.








In
their third issue, the tenants assert that the trial court erred in denying
their motion for directed verdict.  The tenants moved for a directed verdict
after the landlords rested their case-in-chief on the landlords= property damage claim. 
After the trial court denied the motion for directed verdict, the tenants
proceeded with presenting evidence during their case-in-chief and did not
reurge their motion for directed verdict at the close of the evidence. 
Therefore, the tenants failed to preserve their complaint for appellate
review.  See 1986 Dodge 150 Pickup v. State, 129 S.W.3d 180, 183
(Tex. App.CTexarkana
2004, no pet.); Horton v. Horton, 965 S.W.2d 78, 86 (Tex. App.CFort Worth 1998, no pet.); Cliffs
Drilling Co. v. Burrows, 930 S.W.2d 709, 712 (Tex. App.C Houston [1st Dist.] 1996,
no writ).  The tenants=
third issue is overruled.

                                                           Trial
Court=s
Judgment

In
their fourth issue, the tenants globally assert that the judgment entered by
the trial court is Ainconsistent
with the evidence presented at trial and is contrary to applicable law.@  The tenants support this
contention by making several complaints about the judgment.  We address these
complaints separately.

The
tenants first contend that the trial court should have disregarded the jury=s Ano@
answers to Question Nos. 5 and 7 of the court=s
charge.  Question No. 5 asked the jury if the landlords Awrongfully@
withheld any portion of the security deposit.  Question No. 7 asked the jury to
determine if the landlords Awrongfully@ failed to timely provide a
written description and itemized list of damages after the tenants surrendered
possession of the premises.

Section
92.109 establishes two causes of action that permit a tenant to seek a recovery
of his security deposit from his landlord.  See Pulley v. Milberger, 198
S.W.3d 418, 427-28 (Tex. App.C
Dallas 2006, pet. denied).  The first cause of action involves a landlord=s bad faith retention of
the security deposit and is established in Section 92.109(a).  To prevail under
this cause of action, the tenant must prove the landlord (1) acted in bad faith
and (2) retained the security deposit in violation of the statute.  When a
landlord is found liable under Section 92.109(a), the tenant may recover from
the landlord (1) an amount equal to the sum of $100, (2) three times the
portion of the security deposit wrongfully withheld, and (3) the tenant=s reasonable attorney=s fees in a suit to recover
the security deposit.








The
second cause of action involves a landlord=s
bad faith failure to account for the security deposit and is established in
Section 92.109(b).  To prevail under this cause of action, the tenant must
prove the landlord (1) acted in bad faith and (2) failed to provide the tenant
with: (a) a written description of the damages in violation of the statute and
(b) an itemized list of the deductions in violation of the statute.  A landlord
who is found liable under Section 92.109(b):  (1) forfeits the right to withhold
any portion of the security deposit, (2) forfeits the right to sue the tenant
for damages to the premises, and (3) is liable for the tenant=s reasonable attorney=s fees in a suit to recover
the security deposit.

Question
No. 5 contained most of the elements of a cause of action under Section
92.109(a), and Question No. 7 contained most of the elements of a cause of
action under Section 92.109(b).  Particularly, Question Nos. 5 and 7 omitted
the element of bad faith.  The court=s
charge submitted the element of bad faith to the jury in Question No. 8 in the
following manner:

Did the [landlords]
act in bad faith?

 

(a)
       In failing to return the [tenants] security deposit on or before the
30th day after they surrendered possession of the premises?

 

Answer AYes@ or ANo.@

 

Answer:         No     


 

(b)        In
failing to provide a written description and itemization of deductions to the
[tenants] on or before the 30th day after they surrendered possession of the
premises.  

 

Answer AYes@ or ANo.@

 

Answer:         No     


 

Question No. 8
was not conditioned upon affirmative findings to Question Nos. 5 or 7.  Thus,
the jury considered the issue of bad faith on both causes of action set out in
Section 92.109 even though the jury had previously determined that the
remaining elements of the two statutory causes of action did not exist.   

By
answering Ano@ to both parts of Question
No. 8, the jury found that the landlords did not act in bad faith in either
failing to return a portion of the security deposit or providing an accounting 








of property
damages. This unchallenged finding[4] precludes our
consideration of the tenants=
evidentiary challenges to Question Nos. 5 and 7.  Even if the jury had answered
Question Nos. 5 and 7 in favor of the tenants or if the trial court had
disregarded the jury=s
Ano@ answers to these
questions, the jury=s Ano@ answers to Question No. 8 prevents the
tenants from making a recovery on either of their statutory security deposit
causes of action.  Thus, the jury=s
determination that the landlords did not act in bad faith renders the jury=s answers to Question Nos.
5 and 7 immaterial.  A question is immaterial when it is rendered immaterial by
other findings.  See Spencer v. Eagle Star Ins. Co. of Am., 876
S.W.2d 154, 157 (Tex. 1994).   Accordingly, we do not consider the tenants= evidentiary challenges to
Question Nos. 5 and 7 because they are not necessary to the final disposition
of the appeal.  See Tex. R. App.
P. 47.1.








Moreover,
there is evidence that supports the jury=s
answers to Question Nos. 5, 7, and 8.  The landlords testified that they
incurred expenses of $5,198.03 to repair the property after the tenants vacated
the premises.  This amount exceeded the amount of the security deposit.[5]
Additionally, the trial court had previously determined that the tenants owed
unpaid rent and late fees of $8,850.  The lease provided that the landlords
could deduct unpaid or accelerated rent and late fees from the security
deposit.  Furthermore, Tex. Prop. Code
Ann. '
92.107(a) (Vernon 2007) provides that the landlord is not obligated to return a
tenant=s security
deposit or give the tenant a written description of the damages and an itemized
list of the deductions until the tenant gives the landlord a written statement
of the tenant=s
forwarding address for the purpose of returning the security deposit.  See
Pulley, 198 S.W.3d at 427-28.  DeWitt testified that the tenants did not
provide a forwarding address for this purpose.  With respect to the issue of
the landlords= bad
faith, there is evidence that the tenants ended communications with the
landlords by canceling their e-mail account prior to vacating the premises. 
The tenants also did not claim certified mail sent to them by the landlords= attorney.  The landlords
testified that they filed the suit in order to Aget
somebody to talk@ to
them because they had not had any communication with the tenants after the
tenants vacated the property.

The
tenants next argue that the trial court=s
judgment should not have included an award of 

attorney=s fees to the landlords for
defending the tenants=
statutory security deposit claims.  The tenants contend that Section 92.109
does not provide for the recovery of a landlord=s
costs for defending a security deposit claim.  Attorney=s fees may be recovered from an opposing party
only when permitted by statute or by contract. Holland v. Wal‑Mart
Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999). The lease executed by the
parties contains an attorney=s
fees provision that reads as follows:

33.  ATTORNEY=S FEES: Any person who
is a prevailing party in any legal proceeding brought under or related to the
transaction described in this Lease is entitled to recover prejudgment
interest, attorney=s
fees, and all other costs of litigation from the nonprevailing party.

 

Pursuant to this
provision, the landlords are entitled to recover their attorney=s fees incurred in
successfully defending the security deposit claims because the claims are Arelated to the transaction@ described in the lease.

The
tenants next contend that the trial court=s
judgment should not have awarded the landlords prejudgment interest on their
recovery of attorney=s
fees in the amount of $23,000. Prejudgment interest is generally not allowed on
an award of attorney=s
fees. C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 325
(Tex. 1994).  However, in A.V.I., Inc. v. Heathington, 842 S.W.2d 712,
717 (Tex. App.CAmarillo
1992, writ denied), the Amarillo Court of Appeals concluded that prejudgment
interest on attorney=s
fees paid prior to the entry of judgment is recoverable.  The landlords filed
an affidavit in the trial court showing that they had paid attorney=s fees in excess of $23,000
prior to the entry of judgment.  Accordingly, the trial court did not err in
awarding the landlords prejudgment interest on their recovery of attorney=s fees.

Next,
the tenants attack the award of court costs in the trial court=s judgment.  They contend 
that the award of a specific amount of court costs is improper.  They
additionally assert that the award of court costs is not supported by evidence.[6] 
The tenants=
evidentiary challenge is misplaced because court costs are not an issue for the
finder of fact.  See Am. Commercial Colls., Inc. v. Davis, 








821 S.W.2d 450,
455 (Tex. App.CEastland
1991, writ denied) (The right to costs is based entirely on statutes or
procedural rules; the trial court should determine and award costs from the
record.).           The court=s
role is to adjudicate which party or parties are to bear the costs of court, not
to determine the correctness of specific items.  See Reaugh v. McCollum
Exploration Co., 167 S.W.2d 727, 728 (Tex. 1943); Pitts v. Dallas County
Bail Bond Bd., 23 S.W.3d 407, 417 (Tex. App.CAmarillo
2000, pet. denied).  Thus, the judgment should not state the amount taxed as
costs but only that costs are awarded against a certain party.  See Pitts,
23 S.W.3d at 417.  However,  the tenants do not challenge the accuracy of the
amount of court costs awarded in the final judgment.  In the absence of a
complaint about the amount of court costs taxed against them, we will not
disturb the award of court costs in the judgment.  However, if the tenants wish
to complain about the taxation of any specific costs, the proper remedy is to
file a motion to re‑tax costs in the trial court. See Operation Rescue‑Nat=l v. Planned Parenthood of
Houston & Se. Tex., Inc., 937 S.W.2d 60, 87 (Tex. App.CHouston [14th Dist.] 1996),
aff=d as
modified, 975 S.W.2d 546, 570 (Tex. 1998).

The
tenants= next
complaint focuses on the award of the landlords=
attorney=s fees for
prosecuting their property damage claim.  The jury awarded the landlords 
$1,858.63 in property damages.  The tenants assert that the landlords could not
have been prevailing parties under the lease=s
attorney=s fee
provision because the tenants=
security deposit of either $2,450 or $3,900 exceeded the amount of property
damages awarded by the jury.  This contention is not consistent with the manner
that the parties=
presented the property damage question to the jury during closing arguments. 
Specifically, both parties argued that the jury=s
answer to the property damage question should be the amount of damages that the
jury determined were in excess of the security deposit made by the tenants. 
Accordingly, the landlords were prevailing parties on their property damage
claim because the jury made an award for property damages in excess of the
security deposit made by the tenants.

Finally,
the tenants argue that they should have been credited with either a payment of
$2,450 or $3,900 toward the judgment=s
award of prejudgment interest.  The tenants base this argument on the same
contention discussed in the preceding paragraph.   This argument is misplaced
because the award of prejudgment interest is based on amounts ordered to be
paid by the tenants in excess of their security deposit.  The tenants= fourth issue is overruled.








 

                                                                Premises
Liability

In
their fifth issue, the tenants challenge the trial court=s directed verdict denying their premises
liability claim.  In reviewing the grant of a directed verdict, an appellate
court follows the standards for assessing the legal sufficiency of the
evidence. City of Keller, 168 S.W.3d at 809‑28.  We must decide
whether there is any evidence of probative value to raise an issue of material
fact on the question presented. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001).  We must credit the favorable evidence if reasonable jurors
could and disregard the contrary evidence unless reasonable jurors could not.  City
of Keller, 168 S.W.3d at 827.

As
noted previously, Mrs. Williams was sexually assaulted inside the home on April
16, 2002.  Her assailant, Felix Kauffman, testified at trial.  Kauffman
followed her home one day after observing her at a fitness club in Tyler.  He
returned to the home the next day and entered it when no one was present. 
Kauffman testified that he entered the home through the unlocked front door. 
He hid in the house while waiting for Mrs. Williams to return.  After Mrs.
Williams entered the home, he tackled her inside of the master bedroom. 
Kauffman immediately blindfolded Mrs. Williams, and then he sexually
assaulted her.  The sexual assault ended when Mr. Williams returned home. 
Kauffman fled the home when Mr. Williams discovered the assault taking place.

The
bedroom where the assault occurred had an exterior door that opened into the
backyard.  The tenants=
premises liability claim focuses on the type of lock on the interior side of
this door.  The lock required a key in order for the door to be locked or
unlocked from the inside.  The tenants kept the key to this lock at another
location inside the bedroom.  The tenants contend that this type of lock
violated the requirements of Tex. Prop.
Code Ann. '
92.153 (Vernon 2007) because it was not a Akeyless
bolting device.@

Mrs.
Williams did not attempt to escape from Kauffman during the attack.  She
testified that she considered trying to escape during the attack but that she
knew there was no way she could have retrieved the key to the door and then
used it to open the door.  The tenants contend that the type of lock on the
exterior bedroom door contributed to her decision to submit to the assault. 
They assert that Mrs. Williams would have had a better chance of escaping from
Kauffman if the exterior bedroom door had been equipped with a keyless bolting
device as required by the statute.








There
is a significant body of law in Texas dealing with a landlord=s liability for an attack
on a tenant by a third party occurring on the leased premises.   As a rule, a
person has no legal duty to protect another from the criminal acts of a third
person.  Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d
749, 756 (Tex. 1998).  However, Texas courts have recognized an exception to
the general rule for a landlord that retains control over the security and
safety of the premises.  In this situation, the landlord has a duty to use
ordinary care to protect tenants from the criminal acts of third parties if the
landlord knows or has reason to know of an unreasonable and foreseeable risk of
harm to the tenant. Id.

In
the typical landlord liability case, the tenant asserts that the landlord=s negligence caused  him or
her to be the victim of the criminal act of a third person.  The issue of
foreseeability is a major element in these cases.  Only the general danger, not
the sequence of events that produced the harm, must be foreseeable. Id.
The general danger in the typical case is the risk of injury from the criminal
activity of third parties.  Id.  There must be evidence of specific
previous crimes on or near the premises in order to establish foreseeability. Id.
In determining whether the criminal conduct was foreseeable, the court must
consider whether any criminal conduct previously occurred on or near the
property, how recently the criminal conduct occurred, how often it occurred,
how similar the conduct was to the conduct on the property, and what publicity
was given to the occurrences to indicate whether the landlord knew or should
have known about them. Id. at 757.

The
fact pattern in this appeal differs significantly from the ordinary claim
because the tenants are not asserting that the landlords and the property
manager failed to prevent the assault from ever occurring.   Instead, the
tenants are contending that the acts and omissions of the landlords and the
property manager hampered Mrs. Williams=s
opportunity to escape from the criminal acts of a third party.  The tenants= claim is, therefore, more
complex than the typical landlord liability case because it requires us to
consider an additional element to determine the landlords= potential liability.  This
additional element is the matter of evaluating Mrs. Williams=s opportunity to escape
from her attacker.  








To
prevail on their premises liability claim, the tenants must establish the
existence of a duty, a breach of that duty, and damages proximately caused by
the breach. W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995).  We
direct our analysis to the element of proximate cause.  Proximate cause has two
components:  cause in fact and foreseeability. Travis v. City of Mesquite,
830 S.W.2d 94, 98 (Tex. 1992).  These elements cannot be established by mere
conjecture, guess, or speculation.  Doe, 907 S.W.2d at 477.  The test
for cause in fact is whether the act or omission was a substantial factor in
causing the injury without which the harm would not have occurred. Marathon
Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003).  If the defendant=s negligence merely
furnished a condition that made the injuries possible, there can be no cause in
fact.  IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 799 (Tex. 2004).  In other words, the conduct of the defendant may
be too attenuated from the resulting injuries to the plaintiff to be a
substantial factor in bringing about the harm.  Id.

Our
application of the foregoing standards establishes that there is no evidence
that the absence of a keyless bolting device on the exterior bedroom door
proximately caused the tenants=
injuries.  Specifically, there is no evidence beyond mere conjecture, guess, or
speculation that a different type of lock on the bedroom door would have
allowed Mrs. Williams to escape from Kauffman=s
sexual assault.   The possibility of escaping a physical assault brought about
by a criminal perpetrator is an inherently speculative matter.  Furthermore,
the task of predicting the likelihood of escaping is particularly speculative
when the victim does not attempt to escape his or her attacker.

The
tenants contend that the type of door lock denied Mrs. Williams the Aopportunity to [try] to
escape@ by
contributing to her decision to submit to the assault.  Mrs. Williams testified
as follows in this regard:

Q.        What do
you remember, if anything, occurring to you that caused you not to resist his
attack?

 

A.
       What do I remember?

 

Q.        What do
you remember occurring to you at the B
at the time you were being 

attacked that caused
you not to resist and try to escape?

 

A.        Well,
number one, I wasn=t
positive if he had a weapon.  And number two, I B
for the same reason we talked about.  I didn=t
have anywhere to go.  There was nowhere to get if I wanted to.

 








Q.        What is
your opinion of your B
the likelihood that you would have looked for an opportunity or pursued an
opportunity to escape had you had an idea that you could have gotten out that
door?

 

A.        I B I B I would have, hopefully, taken it.  I mean,
that=s to me B I don=t know that answer.  I
mean, I do know that I knew the door was locked and I couldn=t get out that door,
because there was no key.  But I don=t
know from then if B if
it hadn=t been like
that, I don=t know
what B

 

Q.        Can you B can you tell us whether or
not you can honestly say that realizing that the B
realizing the type of lock that was there B

 

A.        Uh-huh
(Affirmative)

 

Q.        B contributed to you
submitting to the assault that you suffered?

 

A.        What is
your B say it again. 
I B I want to make
sure I answer B

 

Q.        Can you
tell us whether or not the type of lock that was on that door B

 

A.        Yes.

 

Q.        B contributed to you
submitting to the assault that you suffered?

 

A.        Yes.

 

As reflected by
the foregoing testimony, Mrs. Williams testified that she does not know if she
would have tried to escape from Kauffman if the exterior bedroom door had been
equipped with a keyless bolting device.  Accordingly, there is no evidence
beyond mere speculation that Mrs. Williams would have been able to escape with
a different type of door lock.  The tenants=
fifth issue is overruled.

                                          Attorney=s Fees and Sanctions

The
tenants= sixth and
seventh issues pertain to the landlords=
recovery of attorney=s
fees on their unpaid rent claim.  The jury awarded the landlords attorney=s fees of $10,000 on the
rent claim.  The landlords=
trial counsel testified that they had incurred attorney=s fees of $15,000 on the rent claim.  On
cross-examination, the landlords=
trial counsel attributed $5,000 of the $15,000 amount to work performed through
the point of obtaining the partial summary judgment.








Near
the end of the trial, the tenants informed the trial court during a bench
conference that they wanted to call one of the landlords= other attorneys as a witness.  The tenants
sought to challenge the previous testimony of the landlords= trial counsel with the
testimony of his associate.  Specifically, the tenants wanted to introduce an
affidavit prepared by the associate regarding the landlords= attorney=s fees that the landlords
attached to their motion for partial summary judgment.  The trial court did not
permit the tenants to call the associate attorney as a witness.   The trial
court also did not permit the tenants to offer the associate=s affidavit as an exhibit.[7]

The
tenants alleged in their motion for new trial that the testimony of the
landlords= trial
counsel constituted intrinsic fraud on the basis that it was inconsistent with
the matters set out in the associate=s
affidavit.  In response to the motion for new trial, the landlords filed a
motion for sanctions against the tenants=
trial counsel, J. Bennett White, asserting that he lacked a factual basis for
the intrinsic fraud allegation.  The trial court denied the motion for new
trial after conducting a hearing on the motion.  The trial court also granted
the landlords= motion
for sanctions by ordering White to pay the landlords sanctions in the amount of
$250.

In
their sixth issue, the tenants assert that the trial court erred in denying the
motion for new trial on the basis of intrinsic fraud.  We review a trial court=s ruling on a motion for
new trial for an abuse of discretion. Dir., State Employees Workers= Comp. Div. v. Evans,
889 S.W.2d 266, 268 (Tex. 1994).  We begin our analysis by noting that no
reporter=s record from
the hearing on the motion for new trial has been filed in this appeal.  In the
absence of a record from the hearing, we are unable to determine if the trial
court abused its discretion in denying the motion for new trial.








Moreover,
the Tyler Court of Appeals has previously addressed the tenants= allegation of intrinsic
fraud in a mandamus proceeding in In re Williams, No. 12-06-00361-CV,
2007 WL 1241517 (Tex. App.CTyler
April 30, 2007, orig. proceeding) (mem. op.).  The mandamus request arose from
the tenants= efforts
to obtain the billing records of the landlords=
trial counsel by a subpoena duces tecum prior to their hearing on their motion
for new trial.  2007 WL 1241517, at *1. The trial court quashed the tenants= subpoena duces tecum.  Id. 
The tenants sought an order from the Tyler Court of Appeals compelling the
trial court=s
enforcement of the subpoena so that the billing records could be included in
the record in this appeal.[8]  Id. 
In reaching its decision to deny the tenants=
mandamus request, the Tyler Court of Appeals  noted that the tenants Apresented no evidence of intrinsic
fraud at the hearing on their motion for new trial.@  Id.  In the
absence of a record from the hearing, we are reluctant to disagree with the
determination by the Tyler Court of Appeals that the tenants presented no
evidence of intrinsic fraud.  The trial court did not abuse its discretion in
denying the motion for new trial if the tenants did not present any evidence of
intrinsic fraud.  The tenants=
sixth issue is overruled.

The
tenants allege in their seventh issue that the trial court erred in ordering
White to pay sanctions.  The landlords sought sanctions against White under Tex. R. Civ. P. 13 on the basis that
White did not have a good faith basis to allege that the landlords= trial counsel offered
false testimony on the issue of attorney=s
fees.  The landlords sought sanctions in the amount of $500, which they alleged
constituted their attorney=s
fees for filing the motion for sanctions.  After a hearing, the trial court
granted the motion by ordering White to pay sanctions of $250.  We review the
imposition of Rule 13 sanctions under the abuse of discretion standard.  See
Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007).

As
a preliminary matter, we note that the tenants filed a separate notice of
appeal with respect to the sanctions order that was entered after the trial
court signed the final judgment.  However, this notice of appeal does not list
White as an appellant.  The landlords contend that the tenants lack standing to
appeal the sanctions order because it only affects White.  In Braden v.
Downey, 811 S.W.2d 922, 928 n.6 (Tex. 1991), the supreme court reserved
this question for future consideration.  (AWe
express no opinion on the question whether, in order to seek review of
sanctions by appeal, an attorney must perfect a separate appeal apart from that
perfected by his client.@) 
In the absence of an answer to the question in Braden, we agree with the
landlords= contention
that the tenants lack standing to attack the sanctions order.  ATexas courts have long held
that . . . appealing [parties] may not complain of errors that do not
injuriously affect [them] or that merely affect the rights of others.@  Torrington Co. v.
Stutzman, 46 S.W.3d 829, 843 (Tex. 2000); Tex. Workers= Comp. Ins. Fund v.
Mandlbauer, 988 S.W.2d 750, 752 (Tex. 1999).








Furthermore,
the trial court=s
sanctions order indicates that a hearing was held on the motion for sanctions. 
However, a record of the hearing has not been filed in this appeal.  As was the
case with the motion for new trial, without a record of the hearing, we are
unable to determine if the trial court abused its discretion in granting
sanctions.  Additionally, the opinion by the Tyler Court of Appeals reveals
that White lacked a good faith basis for making the intrinsic fraud allegation
because he did not seek discovery of the landlords= attorney=s
fees statements during the applicable discovery period.  The tenants= seventh issue is
overruled.

Finally,
the landlords have filed a motion for further sanctions against White based
upon the presentation of the tenants=
sixth issue.  This motion is overruled.

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.  The landlords= motion for sanctions on appeal is overruled.

 

 

TERRY McCALL

JUSTICE

 

April 3, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Mr. Williams did not inform the landlords in his April
20, 2002 e-mail that Mrs. Williams was sexually assaulted inside the home. 
Instead, Mr. Williams based the tenants=
desire to vacate the house on Athe sudden death
of [Mr. Williams=s] father and also a painful event for [Mrs. Williams].@





[2]The partial summary judgment did not address the
landlords= recovery of attorney=s
fees on their unpaid rent claim.





[3]The party=s
remedy is to assign error to the trial court=s
judgment ultimately rendered following trial on the merits.  See Turner v.
County of Marion, 549 S.W.2d 254, 255 (Tex. Civ. App.CTexarkana 1977, writ dism=d).

 





[4]The tenants have not challenged the sufficiency of the
evidence supporting the jury=s determination
that the landlords did not act in bad faith.





[5]As noted previously, the parties disputed the amount of
the security deposit made by the tenants.  Based upon the positions taken by
the parties, the tenants posted a security deposit of either $3,900, $2,450, or
$1,000.





[6]We note that the tenants have not cited any authority
in support of their contentions regarding the judgment=s award of costs.





[7]The arguments presented to the trial court indicated
that the tenants did not list the associate as a witness and did not list the
associate=s affidavit as an exhibit.





[8]The Texas Supreme Court transferred the instant appeal
to this court from the Tyler Court of Appeals in a docket control order.  The
transfer order did not extend to the tenants=
subsequent mandamus proceeding.